**STEARNS–ROGER MANUFACTURING COMPANY, a corporation, Plaintiff,**

**v.**

**Joseph P. RUTH, an individual, and Donald I. Griffith, an individual, Defendants.**

**Civ. A. No. 5455.**

United States District Court
D. Colorado.

Nov. 12, 1959.

Holland & Hart, McGrew & Edwards, Denver, Colo., for plaintiff.

Albert L. Vogl, William F. Reynard, and Frank C. Lowe, Denver, Colo., for defendants.

WHAM, District Judge.

### Findings of Fact

1. Defendant Joseph P. Ruth mailed letters to Plaintiff and to its customers, Public Service Company of New Mexico, Black Hills Power & Light Company, Southern Colorado Power Company, Southern Nevada Power Company, on or about the first of July, 1956, offering non-exclusive licenses under Letters Patent No. 2,733,029. Following receipt of such letters, negotiations were instituted between Plaintiff and Public Service Company of New Mexico which culminated in Plaintiff giving Public Service Company of New Mexico an express agreement to indemnify it against any loss by reason of the foundations constructed for it by Plaintiff being held an infringement of Patent No. 2,733,029. Plaintiff and its customers interpreted the written offer to license as being a charge of infringement by reason of the inclusion of photographs showing foundations constructed for Southern Nevada Power Company by Plaintiff which are substantially the same as all other such foundations constructed by Plaintiff. Plaintiff's interpretation was based in part on its past relationship with Defendant Joseph P. Ruth in which Plaintiff was Defendant in a patent infringement suit instituted by Joseph P. Ruth.

2. Defendant Donald I. Griffith entered the employ of Plaintiff in 1945 and was continuously employed until March of 1956. Throughout the period, he was in the Engineering Department under the direct supervision of Fred B. Maychark and also was supervised by Mr. Carl E. Dahlquist, Chief Engineer of Plaintiff. Defendant Donald I. Griffith assisted in the engineering of various types of concrete structures including foundations for the support of equipment rotating about a horizontal axis. It was not until early in the year 1950 that he was assigned to work on a turbo generator foundation which was then being engineered by Plaintiff for the Rocky Ford plant of Southern Colorado Power Company. His work assignment at that time involved what is known as a drawing check and was performed on plaintiff's premises and paid for by Plaintiff at the prevailing salary schedule. The next work assignment of Donald I. Griffith relating to turbo generator foundations was in connection with the stress analysis made for the No. 1 foundation Person Station of Public Service Company of New Mexico commencing on or about January 5, 1951 and continuing until about the first of March, the work being performed on Plaintiff's premises and paid for by Plaintiff at the prevailing salary schedule.

3. Mr. Ralph A. Withrow was the engineer of Plaintiff assigned to design the No. 1 power plant Person Station, Public Service Company of New Mexico and his duties in that capacity included the supervision of engineering and construction of the turbo generator foundation. After a period of discussion with Mr. H. A. Person, Vice President and Chief Engineer of Public Service

Company of New Mexico in the summer of 1950 and with officials of Plaintiff in December, 1950, budget approval was given for engineering of the Y-mass foundation design and arrangements were made to initiate such work about the first of the year 1951. Mr. Withrow requested Mr. Maychark to assign Mr. Hugh W. Hempel to perform the stress analysis for such foundation, but Mr. Maychark was unable to do so and selected Defendant Donald I. Griffith.

4. A conference was arranged on January 5, 1951 between Messrs. Maychark, Withrow and Griffith, at which time the isometric drawing of the Y-mass foundation previously made and dated by Ralph A. Withrow on December 10, 1950, was delivered to said Griffith, together with the turbo generator drawings of General Electric Company and certain other pictorial and descriptive material required for use in making such stress analyses. Instructions were given to said Donald I. Griffith by Messrs. Maychark and Withrow as to the type of services to be performed.

5. Defendant Donald I. Griffith accepted such work assignment and performed the assigned duties without asserting any claim of invention or conflicting patent right and aided and assisted Plaintiff in the engineering of the foundation constructed for the No. 1 Person Station, Public Service Company of New Mexico. He subsequently aided and assisted Plaintiff in engineering similar foundations without asserting or indicating any conflict of interest until after the successful test run of the No. 1 turbo generator unit in August, 1952.

6. Ralph A. Withrow conceived the Y-mass foundation as exemplified in his dated drawing of December 10, 1950, in the period between the summer of 1948 and the end of the year 1949. An article dealing with turbo generator foundations was directed to his attention by Mr. Leonard H. Gemmill in said period as being of interest in foundation design and as a consequence of his previous familiarity with the California Highway Department single column designs, Withrow recognized the possibility of utilizing a Y-mass two-legged turbo generator foundation design whenever there would be an opportunity to use it. This concept was discussed with a number of his associates connected with the power plant section of Plaintiff on numerous occasions between 1948 and January, 1951, and it was his practice to illustrate his description of the foundation with freehand sketches, none of which were preserved. The first drawing by Ralph A. Withrow of the Y-mass foundation which is in evidence here is the drawing dated December 10, 1950, which was shown to and has been identified by a number of the witnesses in this trial.

7. The No. 1 foundation, Person Station, Public Service Company of New Mexico is the first foundation of this type actually constructed and both Donald I. Griffith and Ralph A. Withrow claim the original concept of such design. The earliest date relied on by said Defendant Donald I. Griffith for his concept is a drawing dated March 5, 1950, which is in evidence here and which was witnessed at later dates by his wife and Defendant Joseph P. Ruth.

8. The express contract for the No. 1 power plant unit Person Station, Public Service Company of New Mexico is dated October 2, 1950. Discussions between Messrs. Howard A. Person, Ralph A. Withrow and Donald E. Provost resulted in a decision to utilize the Y-mass foundation design, but only if the engineering studies of Plaintiff and also of General Electric satisfied them as to the adequacy of such design. General Electric Company made an independent study of the design and had one of its engineers, Mr. L. I. Grube, come to Denver to check the engineering of Plaintiff as part of such determination. A meeting was held at which Messrs. Provost, Dahlquist, Withrow, Hempel and Griffith were present on behalf of Stearns-Roger and Mr. Grube on behalf of General Electric which was summarized in a report of Mr. L. I. Grube in evidence here.

9. Following examination of the report on the stress analysis performed by Griffith in the period between January and March, 1951, said Person gave verbal approval to completing the engineering of said foundation under the payment provisions of the contract of October 2, 1950, and this verbal approval was later set forth in formal written approval on or about May 1, 1951, at which time Plaintiff and Public Service Company of New Mexico were preparing the express contract for the No. 2 power plant Person Station which was dated May 2, 1951 and signed on behalf of Public Service Company of New Mexico on May 8, 1951. Such acts constituted a sale and an offer for sale of the Y-mass foundation which Defendants have represented is a foundation coming within the definition of Claims 1 and 2 of Patent No. 2,733,029.

10. There is conflicting evidence about how the foundation was designated by Stearns-Roger employees during the period when the engineering work was being performed, but there is no record evidence in this case which indicates that any recognition was being given said Donald I. Griffith by Plaintiff's organization and several witnesses employed by Plaintiff and Mr. Howard A. Person of Public Service Company of New Mexico positively asserted that the foundation was always recognized as the design of said Ralph A. Withrow in that period.

11. The actual construction of the No. 1 foundation was under the supervision of Mr. W. H. Bousman and Mr. Howard A. Person was present making regular checks on the progress of the construction on behalf of Public Service Company of New Mexico. Actual pouring of the foundation began in November, 1951 and was completed shortly after the first of the year 1952.

12. In the period from 1945 to 1952, Plaintiff was engaged in engineering and constructing various types of concrete foundations, including turbo generator foundations. Variations in design were made according to the requirements of the customer and prior to 1951 turbo generator foundations of the eight-legged, six-legged, four-legged and two-legged types had been engineered and designed by Plaintiff. Other types of two-legged or single column foundations were utilized as supports for cement kilns, crushers and the like. The increased size of the turbo generator units being installed, together with design changes in the equipment necessitating more piping connections, required changes in design to provide more accessibility under the foundation deck and Plaintiff had developed the practice of locating the condenser unit parallel with the turbo generator unit prior to 1950.

13. Plaintiff also designed deck arrangements having an overhanging or cantilever portion and the usual practice was to locate the turbo generator unit on the lengthwise axis of the deck and to balance the supported load as nearly as possible along the vertical center line of the foundation. The feature of utilizing cantilever support was known to others as set forth in the instruction book of Westinghouse Electric Company in evidence here. While no single foundation offered as prior art shows all of the features of the foundation structure defined in Claims 1 and 2 of Patent No. 2,733,029, every substantial and material part thereof was known to and used by Plaintiff prior to the first claimed date of said Donald I. Griffith, and the essential features thereof were known to and published by others prior to his claimed date of conception. Defendant Donald I. Griffith did not do anything requiring the exercise of inventive faculty in connection with his engineering services for the No. 1 Unit, Person Station, Public Service Company of New Mexico and said Donald I. Griffith is not the first and sole inventor of the foundations defined in Claims 1 and 2 of said patent.

14. Defendant Donald I. Griffith knew at the time he commenced the work assignment on January 5, 1951, that the foundation was being engineered for Public Service Company of New Mexico and if the stress analysis demonstrated that it was feasible to build such a

foundation and General Electric Company confirmed this, Public Service Company of New Mexico would authorize the construction of such foundation. He recognized that Public Service Company of New Mexico in doing so was purchasing and agreeing to pay for the foundation when constructed, as well as paying for the engineering services and fee of Plaintiff as soon as verbal approval was given for inclusion of such engineering services in the project involving the No. 1 station. At the time of the meeting with Mr. Grube in March 1951, said Donald I. Griffith knew and understood that General Electric Company was in effect giving approval of the Y-mass foundation and as such approval was the final requirement for inclusion of the foundation within the terms of the agreement of October 2, 1950, he recognized that a sale was imminent or had been consummated. He also knew and understood when he was assigned to do work in connection with the No. 2 Unit, Person Station, Public Service Company of New Mexico during the year 1951 that another offer for sale had been made and another sale had been consummated.

15. Notwithstanding such knowledge and understanding, he aided and assisted Plaintiff in the engineering of such foundations and did not inform Plaintiff of his claim to be the inventor until August or September of 1952. Such statement when made was understood by the representatives of Plaintiff as involving joint invention with Ralph A. Withrow and Griffith's request for financial backing in applying for a patent was understood to mean that a patent, if obtained, would be for the benefit of Plaintiff and its customers. When Griffith did apply for a patent on December 15, 1952, Plaintiff was not advised and it was not until after the patent had issued and Griffith had resigned from Plaintiff's employment, that the fact of application and issuance of the patent was made known through the mailing of the license offers previously referred to.

16. Every substantial and material part of the foundations defined in Claims 1 and 2 of Patent No. 2,733,029 were known, sold and on sale in the United States for more than one year prior to December 15, 1952, and were sold and offered for sale to Public Service Company of New Mexico at least as early as May 2, 1951. At the time the question of filing an application was being considered by officials of Plaintiff, said Donald I. Griffith knew and was advised by a representative of Plaintiff that if the foundation involved anything that was patentable, a valid patent could only be obtained by the joint application of Griffith and Ralph A. Withrow or by the application of Ralph A. Withrow as sole inventor.

17. The circumstances of Griffith's silence when there was a duty on him to speak, of his willingness to assist and aid Plaintiff in the designing of the foundation for Public Service Company of New Mexico, and his acceptance of the assigned duties and performance of same in accordance with the instructions given, his willingness to allow Plaintiff to assume a considerable liability for itself and its customers, and his concealment of the fact of applying for and obtaining issuance of a patent on the foundation create an estoppel against Griffith and his assignee asserting said patent against Plaintiff and its customers.

18. The claims of the Griffith patent require that the center of gravity of the deck and load coincide with the vertical center line of the pillars and the foundation as constructed for the No. 1 Unit, Person Station, Public Service Company of New Mexico with the equipment installed thereon does not meet the limitations of the claims. The fact is that Plaintiff's design and arrangement is directed primarily to providing adequate access underneath the deck and the exact balancing called for by the language of the claim recital is not required. The evidence establishes that the load on the deck is a variable factor changing with the power demands and

functioning of the equipment and cannot be dealt with as a constant as the claim terminology seeks to do.

19. All the elements of patent claim 1 are present in the No. 1 Unit foundation, Person Station, as are the features of limitation of the pillar size and arrangement, excepting the recital of the center of gravity of load and deck being on the vertical center line of the pillars. Plaintiff located the center of gravity near but not on the center line of the pillars, in accordance with usual practice, and other similar foundations were arranged in the same way. Due to variable conditions in the condenser and other equipment supported on the foundation, the center of gravity shifts and is a variable factor, but so long as it remains near the vertical center line of the pillars, vibration and resonance are no problem. Plaintiff's foundations are safely within the manufacturer's tolerance limits with respect to deflection. Claims 1 and 2 fail to define the features defendants rely on as constituting the point of novelty of the invention, and Plaintiff's foundations do not infringe said claims.

20. Griffith was assigned to work on the engineering of the No. 1 Unit, Person Station, which was being directed by Withrow, although he was supervised directly by Maychark. All his work on said foundation was performed in association with Withrow, or in carrying out assigned duties requested by Withrow. His initial work on this assignment required use of Withrow's sketches and the completion of his stress analysis required acceptance of General Electric Company. The only basis for according Griffith the status of inventor is to recognize him as a joint inventor with Withrow of the foundation designed for the No. 1 Unit, Person Station.

21. The evidence establishes that while said foundation was an engineering innovation and was highly satisfactory from the customer's standpoint, the design of such foundation only involved the bringing together of old features in a manner reasonably suggested by the prior art, which could have readily occurred to a skilled worker in such art. Patent No. 2,733,029 does not disclose or claim a patentable invention.

Conclusions of Law

1. The Court has jurisdiction of the subject matter of the action and of the parties to the action.

2. Defendants Donald I. Griffith and Joseph P. Ruth have threatened and continue to threaten Plaintiff and its customers with infringement of Patent No. 2,733,029.

3. Donald I. Griffith is not the first and sole inventor of the foundations defined in Claims 1 and 2 of Patent No. 2,733,029 and said patent is invalid.

4. Every substantial and material part of the foundations defined in Claims 1 and 2 of Patent No. 2,733,029 was invented by and known to others before Griffith's purported invention thereof and constituted a statutory bar to the application filed on December 15, 1952, for which reason Letters Patent No. 2,733,029 is invalid.

5. The work done by Donald I. Griffith in connection with the No. 1 foundation Person Station was directed by Plaintiff with reference to a disclosure made to him by Withrow in the presence of Fred B. Maychark and did not require the exercise of any inventive faculty and were not patentable to him and if anything of a patentable nature derives from the foundation so designed and later produced, it is the joint invention of Ralph A. Withrow and Donald I. Griffith and said Letters Patent are invalid because they were not applied for by the first and joint inventors.

6. The proceedings before the Patent Office in connection with Donald I. Griffith's application for patent resulted in his acceptance of two very limited claims in lieu of the claims of broad scope in his application as filed. This circumstance creates a file wrapper estoppel and every limitation of patent claims 1 and 2 is conclusively presumed to be material. The foundations engi-

neered and constructed by Plaintiff, including the foundation for the No. 1 Unit, Person Station, Public Service Company of New Mexico, do not embody all of the limitations of the claims and even if Patent No. 2,733,029 is valid, Plaintiff has not infringed Claims 1 and 2 thereof.

7. Patent No. 2,733,029 is invalid by reason of the sale and offer for sale of the foundation for the Nos. 1 and 2 Units, Person Station, Public Service Company of New Mexico, not later than May 2, 1951, or more than a year prior to the Griffith filing date of December 15, 1952.

8. Patent No. 2,733,029 is invalid because the features alleged to be patented in and by said patent did not require the exercise of any inventive faculty by Griffith and were not patentable to him.

9. Patent No. 2,733,029 is invalid because each and every material and substantial part of the foundations purported to be patented had been known or used by others, including Plaintiff, prior to the alleged invention thereof by Griffith.

10. That Defendants should be enjoined from interfering with Plaintiff's manufacture and sale of foundations such as, and similar to, the No. 1 Person Station Y-mass foundation, and Defendants should be enjoined from interfering with present and future use of such foundations as are presently used by Plaintiff's customers and which may be subsequently manufactured by Plaintiff and used by subsequent customers, both by reason of the invalidity of Patent No. 2,733,029 for lack of invention and because Y-mass foundations of the type aforementioned do not infringe Patent No. 2,733,029.

11. In view of the foregoing conclusions, the question of shop rights should not be, and is not, considered nor disposed of in this case.

## Decree for Judgment and Restraining Order

This case having been tried before the Court and the parties having submitted written briefs together with proposed findings of fact and conclusions of law, and the Court, after consideration thereof, having made and entered Findings of Fact and Conclusions of Law, it is hereby Ordered, Adjudged and Decreed that:

1. Patent No. 2,733,029 is hereby declared invalid and void because Donald I. Griffith is not the first and sole inventor of the foundations defined in Claims 1 and 2;

2. Patent No. 2,733,029 is hereby declared invalid and void because of sale and offer for sale of foundations covered thereby more than one year prior to the application date of December 15, 1952;

3. Patent No. 2,733,029 is hereby declared invalid and void because of knowledge or use by others of the foundations defined in Claims 1 and 2 before Donald I. Griffith's invention thereof;

4. The turbo generator foundations constructed by Plaintiff of the type installed in the No. 1 Unit, Person Station, Public Service Company of New Mexico, and used by Plaintiff's customers do not infringe Claims 1 and 2 of Letters Patent No. 2,733,029;

5. In view of the foregoing conclusions of the Court, the question of shop rights should not be, and is not, considered nor disposed of in this case.

6. Defendants Donald I. Griffith and Joseph P. Ruth, their associates, attorneys, clerks, servants, agents, employees and confederates, and all those in privity with them, and each of them are hereby ordered and restrained from threatening Plaintiff or any of its customers, or any of its present or prospective users of the Y-mass foundations with infringement litigation, or charging Plaintiff, its customers or users, either orally or in writing, with or notifying them of infringement if they should order, pur-

chase, use or install said turbo generator foundations, and from commencing in this or any other Court, against Plaintiff or any of its customers, any suit for alleged infringement of Letters Patent No. 2,733,029 by reason of the construction, installation or use of said turbo generator foundations;

7. Costs shall be paid by Defendants.